Ronnie L. HARRIS, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 49A04–9602–PC–56.

Court of Appeals of Indiana.

Aug. 27, 1996.

Transfer Denied Oct. 31, 1996.

Ronnie L. Harris, Pendleton, for Appellant–Petitioner Pro se.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Pro-se Petitioner–Appellant Ronnie Harris appeals from the denial of his petition for post-conviction relief following his plea of

guilty to the crimes of Rape, a Class A felony;[1] Confinement, a Class B felony;[2] Burglary, a Class B felony;[3] and Theft, a Class D felony.[4]

We affirm the post-conviction court.

## ISSUES

Harris presents several issues which we restate and consolidate as follows:

1. Whether Harris's guilty plea was entered knowingly, intelligently and voluntarily and whether the State complied with its side of the bargain.

2. Whether Harris received effective assistance of guilty plea counsel.

3. Whether the trial court erred in ordering that the current sentence be served consecutive to a sentence received for a crime Harris committed while in jail pending trial on the current charges.

## FACTS AND PROCEDURAL HISTORY

During the early morning hours of August 25, 1989, the victim and her daughter were asleep in their home. At approximately 4:00 a.m. the victim was awakened when Harris put his hand over her mouth. Harris had broken into the victim's apartment through a rear window of the residence. While holding a sharp object to the victim's side, Harris forced her to fondle his penis and submit to intercourse. Harris threatened to stab the victim's daughter if she refused. The victim did as she was told, fearing for her safety and the safety of her daughter. As Harris completed the attack, he told the victim to stay in bed for ten minutes, or he would stab her.

During the attack, the victim was able to get to a phone to call the police. She gave a description to the police dispatcher, and officers were immediately dispatched to the scene. While en route, Officer D. Tippit observed a subject who matched the description given by the victim. The subject, who was later identified as Harris, was appre-

hended.[5] Harris had several items that belonged to the victim in his possession.

As a result of this incident, Harris was charged with rape, confinement, burglary and theft. Several months later, the State filed an habitual offender charge against Harris. Harris initially pled not guilty; however, he withdrew that plea on the morning of trial, and entered a plea of guilty. Pursuant to a written plea agreement, Harris pled guilty to all four charges initially filed and the State agreed to forego prosecution of the habitual offender charge. The State further agreed to make no sentencing recommendation.

Harris received a thirty year sentence for his rape conviction, ten years for his confinement conviction, ten years for his burglary conviction and two years for the theft conviction. The trial court ordered that the sentences be served concurrently. Harris now appeals.

## DISCUSSION AND DECISION

### I. Guilty Plea

Harris contends that his guilty plea was not knowingly, intelligently, and voluntarily entered for several reasons. Indiana has long recognized that a defendant may forego a trial before a jury of his peers and plead guilty. A criminally accused is afforded "the right to elect as to whether he will stand trial or plead guilty." *Tumulty v. State*, 666 N.E.2d 394, 395 (Ind.1996) (citing *Abraham et al. v. State*, 228 Ind. 179, 185, 91 N.E.2d 358, 360 (1950)). Harris raises issues regarding both requirements for a valid guilty plea: waiver of his constitutional and statutory rights, and the existence of an adequate factual basis.

■ Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1; *Channell v. State*, 658 N.E.2d 925, 928 (Ind.Ct.App.1995),

---

1. Ind.Code 35–42–4–1(a) (1996 Supp.).

2. Ind.Code 35–42–3–3 (1996 Supp.).

3. Ind.Code 35–43–2–1 (1993).

4. Ind.Code 35–43–4–2 (1993).

5. Both the victim and her daughter positively identified Harris as the man who had broken into their apartment.

*reh'g denied, trans. denied.* To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the trial court. *Id.*

### A. The *Alford*/"Best Interest" Plea

First, Harris contends that the trial court erred by accepting his guilty plea when he maintained his innocence. At the guilty plea hearing, the State summarized the events that purportedly took place the night of the crime, and Harris agreed to the factual basis presented. Harris further stated that he did not wish to make any corrections, and that he wished to plead guilty. After concluding that an adequate factual basis was presented, and that Harris understood the nature of the charges against him, the court accepted his plea of guilty.

Prior to sentencing, however, Harris told the probation officer completing his presentence report that he did not rape the victim. Specifically, the presentence report reveals as follows:

> [Harris] stated that he was forced by time and by the fact no defense for him has been undertaken, to sign a plea agreement. He stated further that he was not guilty as charged in the Information; he admitted that a sexual act had taken place but described it as a consensual act, one agreed to by Ms. Hayes as an exchange for money owed the defendant for drugs that he had sold to her.

(R. 58). At the sentencing hearing, the court questioned Harris extensively regarding the comments he made to the probation officer which found their way into the presentence report. The following colloquy took place:

> THE COURT: Mr. Harris, I need to question you a little bit about the statements I believe you made in your presentence report, under the "Defendant's Statement," and you indicated that you felt you were forced by time and the fact that you have no defense that had been undertaken for you, to sign the plea agreement. You further stated that the information you didn't feel was correct. You admitted that a sex

act had taken place, but you indicated it was consensual.

DEFENDANT: Yes.

THE COURT: That was not what you said on the day of the taking of the guilty plea, was it?

DEFENDANT: Ma'am?

THE COURT: Didn't you admit to the facts that were put on by the State on the day that you entered your plea of guilty?

DEFENDANT: No, I didn't.

THE COURT: Oh, you didn't?

DEFENDANT: No, I didn't. It was—my attorney told me to say "basically." So I said, "Basically."

THE COURT: Your attorney told you to say "basically" and you said "basically." Well, I believe a re-reading of the record would indicate that you did admit to the factual basis that was submitted by the State on that date. Did you present your own evidence at that time?

DEFENDANT: (Defendant did not respond)

THE COURT: Did you present any of your own evidence at that time? Did you correct any of the State's facts?

DEFENDANT: No.

THE COURT: No? You admitted then, basically, to the facts as they were stated by the State, is that correct?

DEFENDANT: I don't understand what you're saying.

THE COURT: You admitted to the facts as they were presented by the State on a factual basis for your plea? You didn't correct any of them?

DEFENDANT: No. No. I didn't.

THE COURT: But now you're telling me that this was a consensual act?

DEFENDANT: I told my attorney that, too.

THE COURT: Well, I'm asking you if that's what you're telling me.

DEFENDANT: Yes.

THE COURT: Okay. You—do you still wish to plead guilty or are you trying to withdraw your plea of guilty?

DEFENDANT: I mean, what choice do I have?

THE COURT: Well, you always have the choice to go to trial. That's what I'm asking you.

DEFENDANT: How can I go to trial, Your Honor?

THE COURT: I don't know, but most people come in and sit down, and we have a jury, and we have a trial. That's the way most people do it. What would you like to do?

DEFENDANT: I did want it to go to trial.

THE COURT: You did? But now you don't?

DEFENDANT: I can't go with this attorney right here. No, I can't.

(R. 93–96). Harris then went on to express his disenchantment with his attorney, and said that his attorney had no argument for his defense, so "what [was he] supposed to do?" (R. 97).

Our review of the guilty plea hearing reveals that when asked if the State's recitation of the offense accurately depicted what happened, Harris responded, "[b]asically, yes, ma'am." (R. 88). When asked if he wished to make any corrections to the State's evidence, Harris responded that he did not.

In *North Carolina v. Alford,* the United States Supreme Court addressed the question of whether a court could accept a guilty plea when it is accompanied by protestations of innocence and hence contains only a waiver of trial but no admission of guilt. 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Alford, who had been charged with murder, took the stand and testified that he had not committed the murder, but that he was pleading guilty because he faced the threat of the death penalty if he did not do so. The Court said that "while most pleas of guilty consist of both a waiver of trial and express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty." *Alford,* 400 U.S. at 37, 91 S.Ct. at 167. Specifically, the Court held that the fact that a criminally accused maintains his innocence should not be a bar to his entering and the court accepting a guilty plea. *Id.* at 37–39, 91 S.Ct. at 167–68. The Court said that its holding did not, of course,

prevent the individual States from barring its courts from accepting guilty pleas from defendants who assert their innocence. *Id.* at 38, n. 11, 91 S.Ct. at 168, n. 11. Indiana did precisely that: The acceptance of a guilty plea when the defendant contemporaneously maintains his innocence is prohibited in Indiana; hence, we do not recognize the so-called "best interest" plea.

Although there were several years of confusion in Indiana after the 1970 *Alford* decision, Indiana had declined to accept guilty pleas coupled with protestations of innocence as early as 1953. *See Harshman v. State,* 232 Ind. 618, 621, 115 N.E.2d 501, 502 (1953), wherein the Indiana Supreme Court stated

[a]s we view it, a plea of guilty tendered by one who in the same breath protests his innocence, or declares he actually does not know whether or not he is guilty, is no plea at all. Certainly it is not a sufficient plea upon which to base a judgment of conviction. No plea of guilty should be accepted when it appears to be doubtful whether it is being intelligently and understandably made, or when it appears that, for any reason, the plea is wholly inconsistent with the realities of the situation.

Several decades later, in *Ross v. State,* 456 N.E.2d 420 (Ind.1983), we reiterated our position regarding *Alford* pleas and held that "a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time. To accept such a plea constitutes reversible error." *Id.* at 423.

Notwithstanding the above precedent, in *Moredock v. State,* 540 N.E.2d 1230 (Ind. 1989), *reh'g denied,* our court modified the rule announced in *Ross* when it declined to extend the rule to protestations of innocence which occur outside the courtroom. In *Moredock,* the defendant pled guilty to the crimes of which he was accused and admitted the factual basis at the plea hearing. Later, during his presentence interview, Moredock told the probation officer that he did not attack the victim, but was only trying to help her. At the sentencing hearing, the defendant said that he had read the presentence report and had no changes to make. Moredock was sentenced pursuant to the plea

agreement, and after serving his sentence, he petitioned for post-conviction relief. The trial court denied the motion. *Moredock*, 540 N.E.2d at 1231. This court reversed, holding that the trial court should not have accepted Moredock's plea because he was pleading guilty while maintaining his innocence. *Id.* The supreme court disagreed and refused to extend *Ross* to situations such as this. Specifically, the court reasoned that even protestations of innocence that "find their way into the record through presentence reports are fraught with the opportunity for too much mischief." *Id.* Thus, the fact that a defendant's version of the offense in the presentence report is different from that given and accepted in open court will not be a sufficient basis for rejecting a guilty plea. However, the *Moredock* court made clear that a trial court should of course question a defendant regarding such protestations of innocence prior to imposing sentence. *Id.*

The case law continued to evolve with *Mayberry v. State*, 542 N.E.2d 1359, 1361 (Ind.Ct.App.1989), *trans. denied*, wherein we held that a statement of innocence made after the acceptance of a guilty plea does not amount to a protestation of innocence requiring the post conviction court to set aside the guilty plea. A few years later in *Trueblood v. State*, 587 N.E.2d 105, 107 (Ind.1992), *reh'g denied, cert. denied Trueblood v. Indiana*, 506 U.S. 897, 113 S.Ct. 278, 121 L.Ed.2d 205 (1992), the supreme court reiterated that a guilty plea must be set aside where a defendant has pled guilty and maintained his innocence *"at the same time."*

However, in *Patton v. State*, 517 N.E.2d 374 (Ind.1987), *reh'g denied*, our supreme court held that while *Ross* applies only to defendants who plead guilty and maintain their innocence at the same time; in capital cases, it will be applied regardless of whether the statement of innocence occurs at the plea hearing, or at some time thereafter prior to sentencing. The court observed, "[i]n Indiana we will not execute people who plead guilty and then protest innocence at their sentencing hearing." 517 N.E.2d at 376. Finally in *Bewley v. State*, 572 N.E.2d 541 (Ind.Ct.App.1991), *trans. denied*, we reached the issue of whether a trial court must set

aside a guilty plea in a non-capital case when the defendant maintains his innocence at a hearing after the guilty plea hearing but prior to sentencing. We held that the trial court, in its discretion, may decline to set aside such a plea. *Id.* at 544; *see also Ford v. State*, 618 N.E.2d 36, 39 (Ind.Ct.App.1993), *reh'g denied, trans. denied* (held that no genuine issue of material fact exists regarding the factual basis for the plea where defendant in non-capital case denied his guilt at the presentence interview and at the sentencing hearing because this merely amounts to a protestation of innocence *after the acceptance of the guilty plea* ); *cf. Brooks v. State*, 577 N.E.2d 980, 981 (Ind.Ct.App.1991) (post-conviction relief petitioner in a non-capital case entitled to relief because he protested his innocence in open court *prior to the court accepting his guilty plea* ).

■ Harris did not maintain his innocence in the courtroom, nor did he maintain his innocence prior to the court's acceptance of his guilty plea. He maintained his innocence at the presentence interview and to a degree at sentencing. As the above progression of cases makes clear, this is not enough to bring him within the mandatory rule announced in *Ross*. We find that the trial court did not abuse its discretion in refusing to withdraw Harris's guilty plea, and the post-conviction court did not err in denying Harris relief.

### B. Waiver of Rights

Next, Harris contends that his guilty plea was not knowingly, intelligently and voluntarily entered because he did not fully understand the charges against him, did not understand that he was waiving his constitutional rights and was not adequately advised of and did not fully understand his right of confrontation.

■ In *White v. State*, Indiana announced a new standard for assessing collateral attacks on post-conviction relief petitions from criminal convictions. 497 N.E.2d 893 (Ind.1986). In deciding whether a plea is made voluntarily and intelligently, the court will review all of the evidence including the transcript of the petitioner's original sentencing, all evidence from the post-conviction hearing and all other parts of the record.

*White,* 497 N.E.2d at 905. A petitioner's conviction will be vacated if the record fails to disclose that the defendant was advised of the right to a jury trial, right of confrontation and right to avoid self-incrimination. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The *White* court held that a petitioner does not meet his burden by merely showing that the trial judge failed to give a statutory advisement as required by Ind.Code 35–35–1–2(a) (1993). Such omission supports reversal only if a petitioner demonstrates that the trial judge's failure to make a full inquiry in accordance with Ind. Code 35–35–1–2(a) rendered his decision to plead guilty involuntary or unintelligent. *White,* 497 N.E.2d at 905; *See Odom v. State,* 647 N.E.2d 377, 381 (Ind.Ct.App.1995), *trans. denied.*

■ The plea agreement contained a waiver of rights which Harris signed and initialed. (*See* R. 46–47). At the guilty plea hearing, Harris indicated that he had read the charging information and understood the charges to which he was pleading guilty. In addition, the record clearly establishes that the trial court ascertained Harris's knowing waiver of his rights prior to accepting his guilty plea. In fact, from our review of the plea hearing, it appears as though the trial court strictly followed Ind.Code 35–35–1–2. Accordingly, the postconviction court did not err in declining to set aside Harris's plea of guilty.

## C. Sentencing Range for Class D Felony

Harris next contends that his plea was not knowingly, intelligently and voluntarily entered because "his attorney and the Trial Court misled him [as] to the possible sentencing range for a class (D) felony."

■ Prior to accepting Harris's guilty plea, the trial court advised him of the penalties for the crimes for which he was waiving jury trial. With regard to the theft charge, the trial court stated, "Count Four is theft, which is a one and a half year presumptive sentence to which the Court could add one

and a half years for aggravating circumstances or subtract one year for mitigating circumstances ..." (R. 78). However, the presumptive sentence for a Class D felony at the time Harris committed the theft, August of 1989, was actually two years.[6] Harris was sentenced to the two year presumptive term; however, because his sentences on counts one through four were ordered to be served concurrently, he suffered no harm. Harris has not alleged any prejudice in his appellate brief nor has he made a showing that he would not have pled guilty had he been accurately advised. *See State v. Lime,* 619 N.E.2d 601, 604 (Ind.Ct.App.1993), *reh'g denied, trans. denied* (mere proof that the court failed to give a non-*Boykin* advisement is not sufficient to render a guilty plea invalid. Rather, a petitioner must prove that the omission rendered his decision to plead guilty involuntary and unintelligent).

## D. Did State Breach Promise in Plea Agreement?

Next, Harris contends that the State failed to comply with its promise to make no sentencing recommendation. At the sentencing hearing, I.P.D. Detective Kuzmik made a statement to the court reflecting his personal opinion regarding the sentence Harris should receive.

■ First, it is clear that prosecutors must honor their promises given in exchange for guilty pleas. *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"). Thus, failure of the prosecutor to adhere to any promise made which induces the guilty plea would constitute a breach of the plea agreement and would render the plea involuntary. *Ryan v. State,* 479 N.E.2d 517, 519 (Ind.1985).

---

**6.** We note that effective April 1, 1990, by emergency order, the presumptive sentence for a Class D felony was returned to 1½ years. P.L. 167–1990, SEC. 2. However, at the time of Har-ris's crimes, the previous version of Ind.Code 35–50–2–7 was still in effect, which provided for a two year presumptive term for Class D felonies. *See* P.L. 136–1987, SEC. 7.

Harris relies on *United States v. Cook*, 668 F.2d 317, 321 (7th Cir.1982), wherein the federal court held that the U.S. Attorney's office breached its promise contained in the plea agreement when it permitted the probation officer assigned to the case to obtain information of an aggravating nature from its file for use in the pre-sentence report to the court. However, in *Cook*, the Government promised in the plea agreement not only to "make no recommendation whatsoever as to any possible punishment," but also promised to "not offer anything at all in aggravation." *Cook*, 668 F.2d at 318. Thus, the promise in *Cook* was much more broad than the promise the prosecution extended to Harris.

In *Santobello*, 404 U.S. 257, 92 S.Ct. 495, a successor prosecutor recommended that the defendant receive the maximum sentence, when unbeknownst to him, the predecessor prosecutor had agreed in the plea agreement not to make a sentencing recommendation. The Supreme Court held that "[t]he staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That the breach of agreement was inadvertent does not lessen its impact." *Id.* at 262, 92 S.Ct. at 499. The case was remanded to the trial court for further consideration. *Id.*

In *Ryan*, 479 N.E.2d 517, the petitioner argued that the State violated a term of the plea agreement when it permitted the victim's mother to address the court at the sentencing hearing. The State had agreed in the plea agreement not to make a sentencing recommendation. Thus, Ryan argued on appeal that the State cannot indirectly achieve that which it is directly prohibited from doing. The supreme court affirmed the denial of postconviction relief, holding that the recommendation offered by the victim's mother was not prompted by the prosecutor or other government agent, but was her own personal opinion. *Id.* at 520. Specifically, the court held that "[t]he conduct of the prosecutor in this situation is unlike that considered in [*Cook* and *Santobello* ], in that it did not have as its intended consequence, the production of a sentence recommendation of the prosecutor before the court." *Id.*

■ Prior to Detective Kuzmik giving his statement, the prosecutor reminded the court that the State would make no sentencing recommendation pursuant to the plea agreement, but that the Detective wished to address the court. True to its word, the State made no sentencing recommendation. Detective Kuzmik's sentencing statement did not represent a sentencing recommendation made by the State, but rather was based on his own personal opinion. As such, the State did not breach any portion of the written plea agreement. Furthermore, the substantive information volunteered by Detective Kuzmik was merely cumulative, as the presentence report contained the same information.

## II. Ineffective Assistance of Counsel

Next, Harris contends that his trial counsel was ineffective for failing to object to Detective Kuzmik's sentencing statement and for inaccurately stating the presumptive sentence for a Class D felony.

■ To succeed on a claim of ineffective assistance of counsel where the petitioner pled guilty, the petitioner must show (1) that counsel's performance was objectively deficient; and (2) a reasonable probability that but for counsel's errors, the petitioner would not have pled guilty. *Minor v. State*, 641 N.E.2d 85, 91 (Ind.Ct.App.1994), *trans. denied*. Harris has failed to prove that he would have opted for a trial had he been properly advised of the penalty for a Class D felony. As stated above, in light of the more severe penalties imposed on Counts one, two and three, and because the sentences were ordered to be served concurrently, any error was harmless.

As for Harris's claim of ineffective assistance of counsel for failure to object to Detective Kuzmik's sentencing statement, we find no error on the part of counsel nor any prejudice suffered by Harris.

## III. Sentence

As his final argument, Harris contends that the trial court erred when it ordered his sentence for obstruction of justice to be served consecutive to his sentence on the current charges.

In September of 1989, while trial was pending on the current charges, Harris was served with a court order to provide hair, blood and saliva samples for analysis. Harris arranged for a fellow inmate to provide the samples. Detective Kuzmik recognized the switch, obtained a taped statement from the other inmate, and later charges were filed against Harris for obstruction of justice. Harris pled guilty, and received a one year sentence. At sentencing on the current charges, the trial court ordered that the sentence on the current charges was to be served consecutive to any time served on the obstruction of justice charge.

Trial courts may not order consecutive sentences without express statutory authority. *Kendrick v. State,* 529 N.E.2d 1311 (Ind.1988). The relevant portion of Ind. Code 35–50–1–2(d) (1996) (formerly Ind.Code 35–50–1–2(b)) provides:

> If, after being arrested for one (1) crime, a person commits another crime:

> (1) before the date the person is discharged from probation, parole, or a term of imprisonment imposed for the first crime . . .

> the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

Harris was arrested on the current charges in August of 1989. In October of 1989, while in jail awaiting trial, Harris was charged with obstruction of justice. He was sentenced on the obstruction charge in January of 1990 and on the current charges in December of 1990. Thus, the trial court imposed consecutive sentences pursuant to the express statutory mandate in Ind.Code 35–50–1–2(d). We find no error. *See Garner v. State,* 646 N.E.2d 349 (Ind.Ct.App.1995).

Harris also contends that the trial court did not properly accept the plea agreement prior to imposing sentence. We have reviewed the record and find that the trial court did accept the plea agreement prior to imposing sentence. (*See* R. 88–89). Harris's argument has no merit.

## CONCLUSION

The undisputed evidence does not lead us to a result contrary to that reached by the post-conviction court. We affirm the post-conviction court in all respects.

CHEZEM and KIRSCH, JJ., concur.